```
 1            IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF DELAWARE

 3   RECKITT BENCKISER           :
     PHARMACEUTICALS, INC.,      :  No. 1:13-cv-01461-RGA
 4   et al.,                     :  No. 1:13-cv-01674-RGA
                                 :
 5           Plaintiffs,         :
             v.                  :
 6                               :
     PAR PHARMACEUTICALS INC.,   :
 7   et al.,                     :
               Defendants.       :
 8

 9
                     Friday, December 13, 2013
10                   1:30 p.m.

11                   Rule 16
                     Chambers of Judge Richard G. Andrews
12
                     844 King Street
13                   Wilmington, Delaware

14
        BEFORE:   THE HONORABLE Richard G. Andrews,
15                United States District Court Judge

16
        APPEARANCES:
17
                     WOMBLE CARLYLE SANDRIDGE RICE
18                   BY:  MARY W. BOURKE, ESQ.

19                             -and-

20                   TROUTMAN SANDERS LLP
                     BY:  DANIEL LADOW, ESQ.
21                   BY:  TIMOTHY HEATON, ESQ.
                     BY:  JAMES BOLLINGER, ESQ.
22
                         On behalf of Rickett Benckiser
23                       Pharmaceuticals, Inc.

24
```

```
 1      APPEARANCES CONTINUED:

 2                    STEPTOE & JOHNSON LLP
                      BY:  TIMOTHY BICKHAM, ESQ.
 3                    BY:  JAMES HIBEY, ESQ.

 4                        On behalf of MonoSol Rx LLC

 5
                      PHILLIPS, GOLDMAN & SPENCE, P.A.
 6                    BY:  JOHN PHILLIPS, ESQ.
                                   -and-
 7
                      WINSTON & STRAWN LLP
 8                    BY:  PETER PERKOWSKI, ESQ.

 9                        On behalf of Watson Laboratories, Inc.

10
                      RICHARDS, LAYTON & FINGER, P.A.
11                    BY:  STEVEN FINEMAN, ESQ.
                                   -and-
12
                      LATHAM & WATKINS LLP
13                    BY:  JAMES LYNCH, ESQ.
                      BY:  JENNIFER SAIONZ, ESQ.
14
                          On behalf of Par Pharmaceutical
15                        Inc. and IntelGenX Technologies
                          Corp.
16

17                    BAYARD, P.A.
                      BY:  STEPHEN BRAUERMAN, ESQ.
18                        On behalf of LTS Lohmann

19
                      SHAW KELLER LLP
20                    JEFFREY CASTELLANO, ESQ.
                                   -and-
21
                      LEYDIG, VOIT & MAYER, LTD.
22                    BY:  STEVEN SKLAR, ESQ.
                      BY:  GREGORY BAYS, ESQ.
23                        On behalf of Alvogen

24
```

1              THE COURT:  Are there two cases or

2    three cases here?

3              MS. BOURKE:  Three.

4              THE COURT:  Does somebody have a

5    copy of what was submitted in relation to

6    Alvogen?

7              MS. BOURKE:  We did not submit a

8    scheduling order because Alvogen -- because the

9    complaint was filed last week.

10             THE COURT:  All right.  Well, we

11    have these cases, Reckitt Benckiser

12    Pharmaceuticals vs. Par, No. 13-1461 and Reckitt

13    Benckiser vs. Watson, No. 13-1674 and I guess

14    these were sitting in with Reckitt Benckiser vs.

15    Alvogen which is somewhere after 13-1674.  So

16    who's here, Ms. Bourke?

17             MS. BOURKE:  Yes, for the

18    plaintiff and I have with me from the Troutman

19    Sanders firm Daniel Ladow, Jim Bollinger down at

20    the end of the table and Tim Heaton representing

21    the Reckitt plaintiffs.  I also have with me Tim

22    Bickham and Jim Hibey from the Steptoe Johnson

23    firm representing MonoSol.

24             THE COURT:  All right.  Hold on a

1    second.  Oh, yes, okay.  Well, welcome to you

2    all.  And, Mr. Phillips?

3                    MR. PHILLIPS:  Good afternoon,

4    Your Honor.  I'm here for Watson and with me is

5    Peter Perkowski from Winston & Strawn in

6    Chicago.

7                    MR. PERKOWSKI:  Good afternoon,

8    Your Honor.

9                    THE COURT:  Good afternoon.

10   Mr. Fineman?

11                   MR. FINEMAN:  Good afternoon, Your

12   Honor.  I'm here on behalf of Par and

13   IntelGenX.  And sitting to my left is Jennifer

14   Saionz from Latham & Watkins and we also have

15   Jim Lynch from Latham & Watkins on the phone.

16                   THE COURT:  All right.

17   Mr. Brauerman, I haven't seen you in a while.

18   Good afternoon.

19                   MR. BRAUERMAN:  Good afternoon.

20   I'm here on behalf of LTS Lohmann Therapy

21   Systems.

22                   THE COURT:  So that's actually a

23   defendant in the 13-1461?

24                   MR. BRAUERMAN:  Yes, Your Honor.

```
1              THE COURT:  Mr. Castellano?

2              MR. CASTELLANO:  Good afternoon,

3    Your Honor.  I'm here for Alvogen.  And on the

4    phone are Steven Sklar and Gregory Bays from

5    Leydig, Voit & Mayer firm.

6              THE COURT:  Good afternoon to

7    those of you who are on the phone.  So I have

8    two proposed scheduling orders but I guess it's

9    worthwhile just talking to make sure that I have

10   a decent understanding of what the relationship

11   of these three cases is.

12              Are each of these basically

13   generic defendants involving the exact same

14   patents?

15              MS. BOURKE:  Your Honor, these are

16   ANDA cases, yes, that's correct.  I would say

17   that they are not the typical ANDA case.  And

18   the reason for that is it is a unique

19   technology.  It is not your typical tablet or

20   capsule.  It is a film technology which you put

21   the drug on the film and then you administer it

22   sublingually which, therefore, implicates more

23   than just the generic manufacturer in the ANDA.

24   I should say it implicates more than just the
```

1    generic company but also can implicate the

2    manufacturers of the film technology which is

3    why you have multiple defendants in these

4    cases.

5              And I will let my colleagues

6    explain it further, but that's in part why we

7    had such a difficult time in reaching agreement

8    on the discovery limits in deposition, which I

9    apologize and --

10             THE COURT:  No, no.  I'm just

11   looking at it and I recognize LTS Lohmann

12   Therapy as being in the medical field and I know

13   Par is.  Is IntelGenX Technologies the film

14   company or something?

15             MR. LADOW:  Your Honor, if you

16   wish, we can speak for plaintiffs.  But I don't

17   know if, Steven, you want to handle that.

18             MR. FINEMAN:  They are our

19   co-developing partner, Your Honor.

20             THE COURT:  So they're a film

21   company but they have a deal with you on this

22   particular thing?

23             MS. SAIONZ:  They're a drug

24   development company.

1          THE COURT:  Okay.

2          MR. LADOW:  Your Honor, just to

3    amplify it, insofar as this new film technology

4    is involved and it's not just compressing a

5    tablet, companies who are involved in

6    manufacturing the film which may or may not be

7    the generic drug company of the film are

8    implicated in the case.  We believed based on

9    publicly available information that LTS Lohmann

10   was manufacturing this for Par and for

11   IntelGenX.  They have told us that they're not

12   and that they are providing us with a letter to

13   that effect, so they may be out of the case.

14          THE COURT:  In one of these cases,

15   is there a motion to dismiss some defendant

16   based on maybe some idea related to what you

17   just told me?

18          MR. LADOW:  No, Your Honor.

19   There's a motion by Watson to dismiss only --

20   not the 271(e)(2) and (4) counts but the 271(a)

21   declaratory judgment count in that case on both

22   patents.  So it wouldn't dismiss the defendant.

23   It would just dismiss a DJ count.  And I'm just

24   going to say with respect to Watson and Par, we

1     don't have any of their information yet.

2                    We don't know in Alvogen who is

3     actually manufacturing for them.  And what Mary

4     was referring to before about the manufacturers,

5     this may lead to other parties and --

6                    THE COURT:  Okay.  That's what I

7     thought you were suggesting.  So bearing in

8     mind, not that I understand everything that's

9     been said, so I understand there's a certain

10    complexity as to how many defendants there are

11    and maybe the technology is of a different kind

12    that I've seen before.  But in terms of all

13    three suits, it's the same patent or patents

14    that are at issue, right?

15                    MR. LADOW:  Yes, Your Honor.

16                    THE COURT:  Is it one patent or

17    multiple patents?

18                    MR. LADOW:  Right now the present

19    status is that two patents, the same two

20    patents, have been asserted against all of the

21    defendants in each case.  Recently another

22    patent, the '514 patent, which we provided a

23    copy to the defendants earlier in the week, that

24    issued last Tuesday.  It's an Orange Book listed

1          the same day.  We already received a Paragraph 4

2          certification from Alvogen on that patent.  We

3          don't know when we will get one from Par and

4          from Watson, but we're expecting that third

5          patent to be amended into the case as well.

6                    THE COURT:  All right.  Without

7          committing Par and Watson to doing anything they

8          haven't already done, is it the general sense

9          that there's going to end up being three patents

10         in the same case for each of these cases?

11                   MR. LADOW:  At least three, Your

12         Honor.  There are a number of additional patents

13         that have been publicized but not yet issued, at

14         least a dozen of those, so we're not sure

15         exactly which ones are going to be issued and

16         then asserted in the case, so that adds

17         additional level of complexity.

18                   THE COURT:  I guess just because

19         they're publicized gives no hint as to when they

20         might or might not be issued.  Presumably the

21         plaintiff actually has some hints.  But in terms

22         of the casual observer of the defendant, it's up

23         to you to say when these things are actually

24         issued or --

```
 1                    MR. LADOW:  No, Your Honor.  So it
 2         really depends on where it is in the Patent
 3         Office process.  If it gets to a certain point
 4         in the process, if you have a notice of
 5         allowance that you may expect a certain amount
 6         of time for the patent to issue, but it doesn't
 7         always happen that way.  But there are other
 8         patents that are being applied for.  They are at
 9         different stages of the process, and there are
10         also patents that have already been issued which
11         potentially additional patents could come into
12         the suit that have already been issued, but they
13         aren't listed in the Orange Book.
14                    MS. BOURKE:  You can process
15         patents which you can't list in the Orange Book.
16                    THE COURT:  Okay.  I believe you.
17         Well, maybe at some point there might be some
18         other background that somebody wants to tell me,
19         but I did notice, and this is the first time
20         I've ever actually seen this, although I have no
21         objection to it, the parties are working towards
22         an agreement on fill in the blank and intend to
23         submit a proposal to the Court shortly.
24                    MS. BOURKE:  Okay.  There was an
```

1    amended scheduling order that we --

2                    MR. LADOW:  Your Honor, shortly

3    and very shortly --

4                    MS. BOURKE:  We submitted it last

5    night.  Unfortunately, it took a while for the

6    parties to actually agree.  These are the two

7    amended scheduling orders.

8                    THE COURT:  So these have actually

9    been filed?

10                   MS. BOURKE:  Yes, Your Honor.

11                   THE COURT:  No worries.  Does that

12   mean that, in fact, then these points have been

13   resolved?

14                   MS. BOURKE:  Some of them.

15                   THE COURT:  Okay.

16                   MR. FINEMAN:  Your Honor, to

17   direct the Court's specific attention, the

18   parties reached agreement on the Request for

19   Admission on the interrogatories.  The central

20   dispute I think is fair to say resolves around

21   depositions.

22                   THE COURT:  All right.  So what's

23   the most efficient way to go through this?

24   Because you see I highlighted what was important

```
1     to me in yellow.
2                    MS. BOURKE:  Your Honor, if I can
3     direct the Court's attention to it, the
4     agreed-to proposal on the depositions is on Page
5     3 of the Par proposed amended scheduling order.
6                    THE COURT:  All right.
7                    MS. BOURKE:  So that's agreed to
8     so --
9                    THE COURT:  Agreed to, yup, that's
10    done.
11                   MS. BOURKE:  The competing
12    proposals, Your Honor, are at Page 4 spilling
13    over to Page 5 and I think plaintiffs can
14    address their proposal first.
15                   THE COURT:  This is all under the
16    topic of limitations for deposition discovery?
17                   MS. BOURKE:  That's correct, Your
18    Honor.
19                   THE COURT:  So basically it's the
20    same language in each of the two proposed
21    amended scheduling orders or does Watson have
22    something different?
23                   MS. BOURKE:  No, the same
24    language.
```

```
1                    MR. LADOW:  In addition to that, I

2       believe it's the case that both proposals are

3       exactly the same.  All the parties contemplated

4       was that everybody would be working off the same

5       sewing machine.

6                    THE COURT:  Did the parties

7       contemplate that at the end of this whatever

8       parties are left will have the same trial?

9                    MS. BOURKE:  Yes.

10                   MR. LADOW:  One thing obviously

11      for the Court is that the trial date there is --

12      we do have something about that at the end of

13      the order.

14                   THE COURT:  I saw that.

15                   MS. BOURKE:  That's the same --

16      the only difference between the amended

17      scheduling order and what Your Honor has marked

18      up is this one section on the depositions.

19                   MR. PHILLIPS:  So Pages 3 and 4.

20                   THE COURT:  Well, why don't we do

21      this:  Why don't you give me a minute to read

22      what you've written and then probably I will ask

23      for some oral supplementation.

24                   If I'm reading this correctly and
```

1    I'm rounding off here, but on all of the

2    disputed points the plaintiff and the defendants

3    are within 10 percent of each other more or

4    less?

5                    MR. LADOW:  No, Your Honor.

6                    MR. FINEMAN:  No, that's not --

7                    THE COURT:  Well, let's start with

8    the plaintiff.  What's the biggest dispute here

9    that I have to resolve?

10                    MR. LADOW:  Your Honor, there are

11   more minor disputes about certain of the hours

12   for individual depositions.  The two main issues

13   really are the number of depositions that the

14   plaintiffs can take of the other side of the V

15   in a given case, the individual depositions.  I

16   will come back to that.  And then the other

17   issue is the amount of hours, 30(b)(6)

18   depositions hours the plaintiff can take of

19   whomever is on the other side of the V in the

20   case, so to take those one at a time.

21                    We're saying that we would like to

22   be able to take up 14 individual fact

23   depositions of whoever is on the other side of

24   the V in a given case.  So, for example, in the

```
1        Par case, there's Par and IntelGenX and there

2        may be a company that comes in to substitute --

3                    THE COURT:  Every time a new one

4        comes in you get 14 new depositions?

5                    MR. LADOW:  No, Your Honor.  What

6        I didn't say, and I'm sorry for glossing over

7        this, on the prior page on the bottom of Page 3,

8        the last paragraph, the parties basically agree

9        that for purposes of these proposals that were

10       floating back and forth on depositions, that all

11       the parties on one side of the V will be

12       considered the defendant.

13                   THE COURT:  Okay.

14                   MR. LADOW:  So when we say 14

15       depositions of the defendant, we're really

16       saying everybody on the other side of the V.

17                   THE COURT:  Okay.  I got that.

18                   MR. LADOW:  So if there are three

19       parties on the other side, that would be three

20       and change depos, four and change depos per

21       party.

22                   THE COURT:  I got that.

23                   MR. LADOW:  And on that particular

24       issue what the defendants were saying is that we
```

```
 1        should be limited and I think it would be almost

 2        unprecedented in a federal case to four

 3        depositions --

 4                    THE COURT:  Total.

 5                    MR. LADOW:  -- per defendant which

 6        means four depositions per side.  So, for

 7        example, in the Par case even if there are only

 8        two defendants if I understand their proposal

 9        correctly, they're saying we get two depositions

10        of Par, two depositions of IntelGenX for

11        individual fact depositions and then we're done.

12                    THE COURT:  Hold on for just a

13        minute.  In these proposals where it says

14        defendants are limited to a total of 15 joint

15        individual fact depositions --

16                    MS. BOURKE:  That's --

17                    THE COURT:  Oh, I'm sorry.  We're

18        talking about plaintiffs.  Okay.

19                    MS. BOURKE:  The two competing

20        proposals, Your Honor, is sort of the second

21        paragraph of plaintiffs' proposal and what

22        Mr. Ladow was talking about is on Page 5.

23                    THE COURT:  This is the four

24        depositions for defendant in each case?
```

```
 1              MS. BOURKE:  Yes, Your Honor.
 2              THE COURT:  Oh, when I read that,
 3     I thought that somebody cut and paste the
 4     language.
 5              So, defendants, why should they be
 6     limited to four depositions per defendant in
 7     each case because that does seem kind of small?
 8              MR. PHILLIPS:  Well, Your Honor,
 9     what we had originally proposed was that they
10     get a total of 12 depositions and they didn't
11     like that idea.  So we then said four and we're
12     willing to compromise on this, but they want 14
13     from each of the defendants, each defense
14     group.  Do the math.  That gets you up to 42
15     depositions.  Then in the preceding paragraph on
16     Page 3 they're asking for 10 third-party
17     depositions, so that's 52 depositions.  That's
18     not counting our third-party depositions.
19              When you get done doing all of the
20     math here, they're talking about an excessive 80
21     depositions in this case.  Now, that's
22     excessive.  I doubt Your Honor has seen a patent
23     case where there has been a request for 80
24     depositions.  So some place in the middle is
```

1     something that all the defendants can agree is

2     reasonable.

3                    THE COURT:  So, Mr. Ladow -- is

4     that how you pronounce it?

5                    MR. LADOW:  Yes, Your Honor.

6                    MR. FINEMAN:  I just want to

7     supplement to what Mr. Phillips said for one

8     moment.  In addition, they are also

9     contemplating a proposal of three days of

10    30(b)(6) deposition of each defendant.  So in

11    addition to 14 fact depositions, that's

12    exclusive of the 21 hours of 30(b)(6) deposition

13    of each of the defendants.  So effectively in

14    addition to what Mr. Phillips said, you have to

15    add on nine more deposition days.

16                   THE COURT:  But isn't the reason

17    they're doing these depositions of you all is

18    presumably to find out about your proposed

19    generic product?  Aren't they all going to be

20    different?

21                   MR. FINEMAN:  Yes, Your Honor, I

22    think that the depositions of different

23    defendants can be different.  My point --

24                   THE COURT:  I'm just curious.

```
 1        When, let's say, they're deposing Par -- and I
 2        forget who you represent -- but if they're
 3        deposing the Par people, are the Watson people
 4        going to be taking part in those too?
 5                      MR. FINEMAN:  I don't think that's
 6        been resolved yet.
 7                      MR. BOURKE:  My experience in the
 8        past is typically in these multiple defendant
 9        cases they don't do that because there's
10        confidential information that Watson doesn't
11        want to share with Par and vice versa.
12                      MR. FINEMAN:  Your Honor, let me
13        address Par specifically because that's --
14                      THE COURT:  I was just using it as
15        an example.
16                      MR. FINEMAN:  Absolutely.  Your
17        Honor, if followed to its logical conclusion as
18        to Par, for example, plaintiffs would have 14
19        depositions of eight hours with each of the Par
20        witnesses.  They would have three days of Par
21        30(b)(6) depositions.  Then we have a specific
22        carve out to give additional time for Par
23        witnesses to address Par's trade secret
24        declaratory judgment claim in addition to the 10
```

1    third-party depositions that plaintiffs have

2    reserved the right to take.

3              So for just Par exclusive of

4    depositions that Par would affirmatively take,

5    we would be theoretically defending 14 eight-

6    hour depositions, three-day 30(b)(6) depositions

7    and attending 10 third-party depositions.  That

8    seems extraordinary, Your Honor.

9              THE COURT:  Okay.  Mr. Ladow?

10             MR. LADOW:  Your Honor, first of

11   all, I think that you intuited this reflecting

12   what you said.  Because this film technology is

13   new and it's not a generic tablet and based on

14   the information that we see in the Paragraph 4

15   letters, it seems to us that for one thing that

16   the formulations that the different defendants

17   have aren't necessarily the same.  So we're

18   expecting to have different discovery as you

19   indicated as to each defendant including as to

20   the different manufacturing that's going on to

21   produce this film product.

22             If you look at our proposal which

23   is the second paragraph on the top of Page 4,

24   what we're saying is and what I will say is that

1     the -- what Steve said is accurate, but I think

2     that it's incomplete.  Because if we take 14

3     depositions of, let's say, the defendants on the

4     other side of the V in the Par case, it's not

5     just Par.  It's IntelGenX and whoever that

6     manufacturer turns out to be.  So the 14 would

7     be spread out amongst those parties.  It

8     wouldn't be 14 among the one party.

9                  And if it were one party, that

10    would mean that they are also doing the

11    manufacturing.  One other point I will make,

12    Your Honor, is with respect to Watson which is

13    also somewhat unusual in this case.  There was a

14    precursor tablet -- the commercial product is

15    called Suboxone sublingual film, and there was a

16    precursor tablet that went generic and there are

17    two purveyors of generic Suboxone, and one of

18    them is Watson which is a defendant here.

19                  So unlike a generic case, Watson

20    is actually already in the Suboxone market by

21    virtue of the generic tablet market and has a

22    lot more information than the typical generic

23    would, which is another reason for more

24    deposition time.  With respect to the 30(b)(6)

1     deposition time, this is 21 hours of each

2     defendant.  Again, it's all of the defendants on

3     that side of the V.

4                    So if you think of a seven-hour

5     deposition, it would be three 30(b)(6)

6     depositions in effect on the other side of the V

7     which we think is completely reasonable in those

8     circumstances.  And when Mr. Phillips was

9     addressing it before, yes, you can add up all of

10    the time and the time may be more.  You may have

11    a number of hours in the aggregate, but these

12    are individual cases and individual formulations

13    and individual manufacturing and there is also

14    potential trade secrets involved.

15                   Par has a counterclaim that it's

16    alleging that it has not taken plaintiff

17    MonoSol's trade secrets so there's some extra

18    time built into that, but there are a lot of

19    moving parts in the case and we think the amount

20    of hours that we proposed if you look at each

21    case on an individual basis is quite

22    reasonable.

23                   MR. FINEMAN:  Your Honor, if I

24    might address one comment that Mr. Ladow has

1       made with regard to Par and in specific, the

2       parties did address and contemplated specific

3       time to be carved out for the trade secret

4       issue.  Your Honor, in both parties' proposal, I

5       think we have a discrepancy of five hours.  We

6       proposed 35 and they proposed 30 to address

7       Par's specific issue, and that particular issue

8       was the trade secret claim.

9                    But if followed with logical

10      conclusion, when Mr. Ladow was just discussing

11      the 14 hours and the three hours of 30(b)(6),

12      Your Honor can quickly see the disparity here,

13      which is Par would be sharing its time with the

14      other defendants on what I will call the patent

15      issues.

16                   Therefore, we will be addressing

17      the patent issues together with the other

18      defendants, not using that time for our trade

19      secrets case.  If you follow it to its logical

20      conclusion, plaintiffs could use three

21      depositions of Par for the patent issues and

22      then save 11 depositions in addition to the

23      carved-out time to use on the trade secrets

24      claim.  Par would be in an enormous disadvantage

1       in terms of disparity for time on depositions.

2       That's part of the problem with plaintiffs'

3       proposal.  It's a disparity of plaintiff versus

4       defendant in terms of taking the depositions.

5                  MR. LADOW:  Your Honor, we are

6       just at the outset of the case.  We haven't

7       received their ANDAs.  We don't know how they

8       formulated their products, how they

9       manufactured.  Insofar as trade secrets are

10      involved, we don't know how that's intertwined

11      with the rest of that.  And one of the reasons

12      we have structured the proposal the way that we

13      have is because from our point of view there's a

14      lot of uncertainty as to all of that, how much

15      time that's going to take, what the

16      interrelationships are and who these other

17      manufacturers of the generics are.  So we're

18      trying to build that in so we don't have to come

19      back to you and ask for more time later.

20                 THE COURT:  These trade secrets

21      that are being mentioned, these are

22      counterclaims?

23                 MR. FINEMAN:  Yes, Your Honor.

24      This was our declaratory judgment counterclaim.

```
1                    THE COURT:  So there's nothing
2         here that's causing a jury trial for anybody?
3                    MS. BOURKE:  Not at the moment.
4                    THE COURT:  Okay.
5                    MR. PHILLIPS:  Your Honor, with
6         regard to Watson, as they have said they want 14
7         depositions of one defendant.  Even if they add
8         a manufacturing defendant, it's just not that
9         much to ask of a manufacturing defendant.
10        They're not going to take seven depositions of a
11        manufacturing defendant.  They're likely to take
12        one, maybe two.  But now they want 12
13        depositions of the generic drug manufacturer.
14        That is excessive, particularly when you compare
15        what they're asking for against what they're
16        offering to give us.  They want us to be
17        satisfied with 15 joint depositions.
18                    THE COURT:  How many joint
19        depositions do you want?
20                    MR. PHILLIP:  We think 15 was a
21        reasonable number if it's kept proportionate to
22        the number of depositions taken of us.  But if
23        they're going to add a number of patents as we
24        go down the road, we will be coming back to ask
```

1    Your Honor for additional time.

2              THE COURT:  What we come out here

3    may not reflect this, but I don't think we can

4    build in time for things that haven't happened

5    yet.

6              MR. PHILLIPS:  That's what the

7    plaintiffs are doing with all due respect.

8              THE COURT:  Not looking forward to

9    this, but if it turns out that the two patent

10   case becomes a three patent case becomes a seven

11   patent case, then you will have to come back and

12   work out a new schedule or do something.  I'm

13   not sure what, but that would be pretty

14   reasonable.  However, from my limited experience

15   in these kinds of things, it seems to me that if

16   you think under the world as it is right now

17   that 15 joint individual fact depositions of

18   plaintiffs is reasonable, then there doesn't

19   have to be a one-to-one or some specific ratio

20   between what you get and what they get.  It's

21   supposed to be, and it's hard for me to do,

22   impossible really, but I'm supposed to give

23   people what they need, right?

24              MR. PHILLIPS:  Right.

```
 1              THE COURT:  So if what I'm

 2     thinking of doing is saying they can have 10

 3     individual fact depositions per case really or

 4     per defendant, because I do think there are

 5     going to be even apart from trade secrets from

 6     what I've seen in these things, things come up.

 7     And maybe they won't need all of that.  My

 8     impression is -- and maybe it's different in a

 9     case like this -- plaintiffs don't have an

10     incentive to just depose people for no reason at

11     all.  I don't know.  Maybe this is a different

12     case.

13              MR. LADOW:  We're not going to

14     give you any reason to think otherwise, Your

15     Honor.

16              THE COURT:  So I'm kind of

17     thinking they can have 10 individual fact

18     depositions, three days of Rule 30(b)(6,)

19     particularly if it turns out to be three

20     individual defendants per case.  It doesn't seem

21     to me to be unreasonable.  If you want a little

22     more than 15 joint individual fact depositions,

23     just say so and I will give them to you.

24              MR. PHILLIPS:  I think what we
```

```
1       want, Your Honor, is a little more time.  We
2       want 10 hours of each of our individual fact
3       depositions because there's three defendants to
4       cross-examine or examine every fact witness and
5       the plaintiffs have objected to that.  Their
6       proposal is for eight hours and --
7                      THE COURT:  I'm perfectly happy to
8       give you 10 hours per witness, but I think that
9       should be understood unless the witness agrees
10      that's not necessarily 10 hours in one day.
11                     MR. PHILLIPS:  That's fine.  We
12      appreciate Your Honor's offer.  We have
13      conferred.  We think 15 is reasonable at the
14      moment.  We're not going to overextend ourselves
15      or take advantage of anybody here so we're
16      contempt at 15.
17                     THE COURT:  So 15 and 10 hours per
18      individual fact witness would give you what you
19      think you need and give all the defendants
20      working as a group what they think they need.
21                     MR. PHILLIPS:  But we want a
22      little wiggle room, that is, that we might be
23      coming back for --
24                     THE COURT:  I understand.  It
```

1    seems like it's a very fluid situation, and I've

2    got Alvogen which I assume is probably going to

3    craft up some more -- I said craft up some order

4    that probably will track whatever is agreed to

5    in these two cases or whatever we decided upon

6    in these two cases.

7                    MR. PHILLIPS:  Alvogen has

8    actually participated in this discussion on --

9                    MS. BOURKE:  Yes, they've agreed

10   to what he's put into --

11                   THE COURT:  Okay.  Well --

12                   MS. BOURKE:  I've said that they

13   would adopt basically whatever.

14                   MR. FINEMAN:  Your Honor, just a

15   caveat for Par.  All we're looking at on the

16   trade secret side is that we have equal footing

17   with plaintiffs.  We're not asking for more but

18   we also don't want less than them.  In other

19   words --

20                   THE COURT:  I don't really 100

21   percent or at all understand.  Are you saying

22   the way it's written up right now is not what

23   you want?

24                   MR. FINEMAN:  Let me try to make

1    this really simple, Your Honor.  Plaintiffs on

2    Your Honor's ruling or tentative ruling would

3    have 10 depositions of Par.  In addition, the

4    parties agreed that aside from the entire patent

5    case there will be a certain amount of

6    additional hours which is equal between

7    plaintiffs and Par for the trade secret case.

8    But Par has to share in the 15 depositions with

9    its two co-defendants.  So Par is not getting 10

10   individual depositions of plaintiffs.

11                    So my concern is that, for

12   example --

13                    THE COURT:  Isn't it the case the

14   way you're saying is to the extent you're

15   concerned about the trade secrets, that's going

16   to wash out because you're doing equal?

17                    MR. FINEMAN:  That is exactly my

18   point, Your Honor.  So I would ask that Your

19   Honor order that the 10 depositions of Par

20   individually not be directed to the trade secret

21   issue or that Par gets more depositions.  It

22   can't be the case that plaintiffs can reserve

23   some of those 10 depositions to use on the trade

24   secret case.

```
 1              THE COURT:  I thought you were
 2    saying you kind of agreed that you would have a
 3    certain amount set aside on the trade secrets
 4    which is I take it kind of implies that's what
 5    is for the trade secrets and the other stuff is
 6    for the patent issues.
 7              MR. FINEMAN:  Your Honor, I'm
 8    trying to go from implied to expressed.  That's
 9    exactly what Your Honor will be clear about.
10              MS. BOURKE:  Can I ask counsel for
11    Par a question?  Is that what you have
12    contemplated in the last paragraph on Page 3
13    where you had a proposal about the language for
14    single defendant, because I was quite frankly
15    confused about what that meant?  And if that's
16    what your proposal is by excluding the trade
17    secrets, then that's not it --
18              MR. FINEMAN:  No --
19              MR. LADOW:  I should just say one
20    reason why we didn't want to accept that
21    particular language is we really don't
22    understand how it can apply to the structure
23    that we have.
24              MR. FINEMAN:  I can answer that
```

1      question and bring it back full circle, I think.

2      The sole purpose of that language is that

3      IntelGenX has nothing to do with the trade

4      secret claim so they shouldn't be part of that

5      in any respect.

6                   MR. LADOW:  We don't know that.

7                   MR. FINEMAN:  Well, we do.  From

8      our perspective, they have nothing to do with

9      the claim.  They're not a counterclaimant.

10     Plaintiffs haven't sued them so they're not

11     involved in that claim.  So they should have

12     nothing to do with the trade secret claim.

13     They're not a party to it.

14                  THE COURT:  When you say nothing

15     to do with it, you just mean that in the time

16     allocation you get 100 percent?

17                  MR. FINEMAN:  Well, we represent

18     Par and IntelGenX so it doesn't matter in that

19     respect.  My point is that we can't have

20     IntelGenX being involved in the trade secret

21     claim because they're not a party to it.  It's a

22     counterclaim of Par, not --

23                  MS. BOURKE:  We haven't responded

24     to your counterclaim.

```
 1                    MR. FINEMAN:  Yes, you have.

 2                    MR. BICKHAM:  Yes, for --

 3                    MS. BOURKE:  I apologize.

 4                    MR. FINEMAN:  So, Your Honor, the

 5       point is there's a claim and an answer to the

 6       claim and IntelGenX is not a party to it.  So

 7       when we accepted them from the discovery of the

 8       trade secrets, it's no different than if we

 9       accepted Alvogen or someone else because they're

10       not a party to it so they shouldn't be involved

11       in discovery on that claim, because they're not

12       a party to it.

13                    THE COURT:  Well, I think maybe

14       what I'm hearing is if they're not a party, then

15       the party rules aren't going to apply to them,

16       but I don't think you're saying that Mr. Ladow

17       thinks that there's some reason to be deposing,

18       he can't do that as through some other means

19       outside of the party limits?

20                    MR. PHILLIPS:  As part of the 10

21       deposition limit.

22                    MR. FINEMAN:  We can cross it when

23       we get to that bridge.  In other words, whether

24       they can take that deposition with respect to
```

1      the defense part of the DJ action.  I will

2      address that at that time.  I'm just trying to

3      answer Ms. Bourke's question which was the

4      reason for the language of except for IntelGenX

5      is nothing tricky other than they're not a party

6      to that claim.

7                      MS. BOURKE:  Well, I guess the

8      question that I have, Steven, because I'm a

9      little confused is do you have anything in your

10     proposal that that language such that it

11     excludes the trade secrets from the depositions

12     that you -- I'm not seeing it there.  That's why

13     I'm having a problem.

14                     MR. FINEMAN:  That's exactly the

15     point I'm trying to raise with Judge Andrews.

16     There are two buckets of deposition time in the

17     scheduling order as with respect to Par.  The

18     first bucket is what I will call the patent case

19     and Your Honor right now is contemplating

20     limiting plaintiffs to 10 depositions and Par to

21     sharing 15 with two other defendants.

22                     In addition, the second bucket

23     would be time that the parties have agreed to

24     set aside as additional time only as between

1    plaintiffs and Par because we have the

2    additional element of the trade secrets claim,

3    and we have a dispute, Par proposed 35 hours for

4    that and plaintiffs proposed 30 hours for that.

5    I'm sure we can resolve that.  That's not a

6    major dispute.  But what would be a major

7    dispute is I'm relatively confident that our

8    co-defendants Alvogen and Watson will not be

9    sitting idly by while we were to use 50 percent

10   of the defendants 15 depositions to address the

11   trade secrets claim.  So all I'm suggesting is

12   that Par and plaintiffs should be on equal

13   footing on the amount of deposition time for the

14   trade secrets claim.

15                    THE COURT:  My impression that I'm

16   getting is that there is an agreement that there

17   are a certain amount of numbers either 30 or 35

18   or 32-and-a-half for doing the trade secrets

19   stuff, and that I guess will be in your

20   scheduling order and not in anybody else's

21   scheduling order, right?

22                    MR. LADOW:  Your Honor, if I can

23   just say one thing about that.  From our point

24   of view, they have a counterclaim about trade

```
1        secrets, that that issue is raised in some

2        fashion in the case.  What's not clear as at

3        this point in the case is that if we have --

4        plaintiffs want to litigate a patent case.  So

5        we have to take this patent related case,

6        depositions of all of the defense including Par,

7        so we're not planning to take three-quarters of

8        our time on the trade secret case and ignore the

9        patent case.  That's not going to happen.

10                   The only thing I will be concerned

11       about is that if something goes into the order

12       now that somehow is an artificial demarcation

13       to, oh, that's trade secret and this other thing

14       isn't when, in fact, we don't know that today,

15       if we ask about how they're manufacturing their

16       product, they may say, oh, that's trade secret

17       and we will say, well, no, it also goes to the

18       patent case.  And I think the point of it is --

19                   THE COURT:  I assume that trade

20       secret is it's some claim that you stole their

21       trade secrets.

22                   MR. LADOW:  No, that's why this is

23       more complicated than that.

24                   THE COURT:  That they didn't
```

```
1        steal --

2                     MR. BOURKE:  They brought a

3        counterclaim that says they didn't --

4                     THE COURT:  That they didn't steal

5        your trade secrets?

6                     MR. BICKHAM:  Yes, Your Honor.  I

7        believe that the proposal does have some

8        carve-out time which is this 30 hours and 35

9        hours that addresses the issue.  But it sounds

10       like the dispute here is whether plaintiffs

11       could use some of that carved-out time for

12       discovery against IntelGenX or if we would be

13       limited to using the carve-out time to only Par.

14       I believe the plaintiffs' position is we don't

15       know what we're going to see so why limit it

16       to --

17                     THE COURT:  Why don't we right now

18       say it's limited to you and Par.  If you start

19       doing some discovery and you find out that

20       there's a reason to be doing IntelGenX, come

21       back to me if they won't agree to it.  I will

22       give you time to do IntelGenX.

23                     MR. FINEMAN:  I appreciate that,

24       Your Honor.  That's not quite the issue.  Let me
```

1    try it this way:  All we want, Your Honor, is to

2    make sure we have equal time with plaintiffs on

3    the trade secret claim.  If it's 30 hours for

4    each side, fine.  If it's 35 hours for each

5    side, fine.  If it's some other hour, that's

6    fine.

7                THE COURT:  Isn't that something

8    I'm going to have to count on your reasonable

9    good sense judgment down the road because it's

10   not always going to be crystal clear which is

11   which, right?

12               MR. FINEMAN:  Well, that may be

13   the case, Your Honor.  In that case, Par can

14   just take additional time.  The key is we have

15   equal time.  So --

16               THE COURT:  So I think that

17   everybody has agreed that we will write down you

18   will have equal time.  If it becomes a problem

19   down the road and you can't work it out between

20   yourselves, then come back to me.  With the

21   benefit of having some actual concrete

22   knowledge, I don't know, maybe it will be easier

23   to make a decision.

24               MR. LADOW:  That's fine with us,

```
 1     Your Honor.
 2                    MR. FINEMAN:  Your Honor, with the
 3     understanding we will get equal time on the
 4     trade secret claim, then that's fine with Par,
 5     Your Honor.
 6                    THE COURT:  All right.  Do you
 7     want to do 30 hours or 35 hours or
 8     32-and-a-half?
 9                    MR. BICKHAM:  It doesn't matter to
10     us right now, Your Honor.  We will take Par's
11     number, whatever --
12                    MR. FINEMAN:  Let me make sure
13     that was the only dispute.
14                    MS. BOURKE:  The only dispute was
15     the number of hours.  You have 35 and we have
16     30.  I think it's in the proposal.  It's not
17     carved out to say trade secrets for the very
18     reason that Your Honor said, it will be probably
19     be some overlap.
20                    MR. BICKHAM:  Mr. Ladow is a fast
21     talker.  I'm a slow talker so depending on the
22     limit.
23                    THE COURT:  So --
24                    MR. LADOW:  Your Honor, there's
```

```
1    one other small thing that maybe we can get in
2    agreement from defendants.  And that is, on
3    depositions Your Honor said that they can take
4    10 hours of our witnesses.
5                    THE COURT:  Yes.
6                    MR. LADOW:  With respect to their
7    witnesses, we had proposed being able to do
8    eight and they had proposed seven, so that was
9    unresolved at the moment.  I don't know if you
10   guys won't agree to eight or not.
11                   THE COURT:  I kind of wonder why
12   you picked eight because seven is what the rules
13   envisioned.  Then the eight, you got this extra
14   hour so you're either going to tire these people
15   out or -- you see them all the time.  I see them
16   occasionally on video and they look pretty worn
17   out by the end, so I'm sort of inclined to say
18   seven.  Unless you're going to go enough above
19   seven to make it worthwhile to do a second day,
20   I don't really see the point.
21                   MR. PHILLIPS:  We arrived at seven
22   particularly given the number of depositions
23   that are going to be taken, you know.
24                   THE COURT:  When I hear how many
```

 1     depositions that's going to be taken, I will

 2     just point at you.

 3                    MR. PHILLIPS:  I mean, they've got

 4     70 hours of depositions now.

 5                    MR. LADOW:  Your Honor, with the

 6     understanding that we will try to get some

 7     reasonable agreement from our brethren, if we

 8     need to a little more time than seven --

 9                    THE COURT:  You can always try to

10     get reasonable agreement.  I'm not sure about

11     the out-of-town lawyers, but Mr. Phillips,

12     Mr. Fineman and Mr. Brauerman, they're all

13     reasonable people if they're present for these

14     things.  So what else?

15                    MS. BOURKE:  I think that does it

16     with the deposition disputes.

17                    THE COURT:  There was something

18     that was in a bracket earlier on, this business

19     about -- this may be important in light of what

20     you've said, Paragraph 2, defendants proposed

21     addition, all motions to amend to supplement the

22     pleadings -- oh, that's inequitable conduct.

23                    MR. PHILLIPS:  Yes, we wanted a

24     separate date for inequitable conduct after fact

```
1    discovery, Your Honor.

2              THE COURT:  When is the end of

3    fact discovery, January 16th?

4              MR. PHILLIPS:  Yes.

5              MS. BOURKE:  December 15th.

6              THE COURT:  Why don't we just move

7    it up a little bit so that if you actually do

8    it, there's some time to actually do fact

9    discovery on the topic.

10             MR. PHILLIPS:  That's fine, Your

11   Honor.  Of course recognizing when you allege

12   inequitable conduct, the plaintiff is in

13   possession of all of the information that --

14             THE COURT:  You can ask them now.

15   There was none.

16             MR. PHILLIPS:  Right.  That's why

17   we need the fact discovery to get that --

18             THE COURT:  I agree that that

19   should be later.  I'm just saying when you do

20   allege it and you have a theory that you're

21   putting forth, they may want to actually do some

22   discovery themselves.

23             MR. PHILLIPS:  I understand.  But

24   all of the information is in their possession
```

```
 1    anyhow.

 2                    THE COURT:  Why don't you move

 3    that up to --

 4                    MR. PHILLIPS:  December 15?

 5                    THE COURT:  Actually, there's no

 6    reason if they're -- December 1st, there's no

 7    reason to have a second date.  I thought that

 8    was December 1st of 2013 or something.

 9                    MS. BOURKE:  No.

10                    THE COURT:  A lot of times that

11    date is a year in advance.

12                    MR. PHILLIPS:  Keep in mind, Your

13    Honor, under the inequitable conduct pleading

14    standards, we have to be very, very specific.

15                    THE COURT:  I do keep that in

16    mind.  You cannot actually possibly meet that

17    standard.

18                    MR. PHILLIPS:  And that's been

19    your holding in the past.  So we need to take as

20    much discovery as we can get in order to try to

21    convince Your Honor that we have met that.

22                    THE COURT:  So December 1st is a

23    year from now and you can target that discovery

24    to get it done in time.
```

```
 1                    MR. PHILLIPS:  Your Honor, what
 2          happens in these cases is things get put off
 3          until the end of the deadline and inevitably the
 4          parties are scrambling around the last month of
 5          the deadline trying to take however many
 6          depositions they haven't gotten around to, some
 7          of which -- with all due respect and not
 8          necessarily counsel on the other side of this
 9          table -- plaintiff's game is to keep the really
10          bad witnesses to the very end of the fact
11          discovery so that you don't get to the stuff
12          that they don't want you to get to until it's
13          too late.
14                    MR. LADOW:  They're actually dead.
15                    MR. PHILLIPS:  That's their hope.
16                    MR. BICKHAM:  I was going to say
17          there are no bad witnesses.
18                    MS. BOURKE:  But, Jack, they're
19          only 30 days apart.  Can't we compromise?
20                    MR. PHILLIPS:  December 15th?
21                    THE COURT:  December 15th it is
22          because apparently there's this spirit of
23          compromise.
24                    MR. PHILLIPS:  Reasonable people,
```

1      there we go.

2                      THE COURT:  So --

3                      MR. LADOW:  Your Honor, there was

4      one more on Page 6.

5                      THE COURT:  Okay.

6                      MR. LADOW:  It's Paragraph H.

7                      THE COURT:  Yes, core technical

8      documents.  This came up for me the first

9      time -- well, tell me what you think it is.

10                     MR. LADOW:  Your Honor, we think

11     that it can't be seriously argued when

12     defendants produce their core technical

13     documents in accordance with this rule, that

14     they must produce, at least among other things,

15     their ANDA, which we certainly need for

16     infringement contentions, so that should be

17     included and should be understood that they have

18     to produce that at that time.

19                     THE COURT:  Actually, when it

20     comes up before -- I don't know why I thought

21     the ANDA was actually produced before then.

22                     MS. BOURKE:  These are the default

23     standards, Your Honor.  And I guess one of the

24     big disputes between the parties is whether we

1      need to even encompass the default standard in

2      the scheduling order to begin with.  These

3      are --

4                      THE COURT:  I guess what I'm

5      wondering is the ANDAs are already in existence,

6      correct?

7                      MR PHILLIPS:  Yes.

8                      THE COURT:  So why aren't they

9      being produced sort of five days from now?  I

10     understand the protective order, there's a

11     default provision for that.  That means they

12     can't go around publishing them until you

13     actually get a real protective order.

14                     MR. PERKOWSKI:  Your Honor, Watson

15     would be willing to produce them next week,

16     particularly if the Paragraph G default standard

17     could include the identification of claims to be

18     asserted.  That will certainly help us focus on

19     the invalidity contentions later in the case if

20     we knew what claims were being asserted in

21     January rather than in March.

22                     THE COURT:  Well, doesn't it kind

23     of work the other way here?  You produce ANDA.

24     They look at it and then they tell you which

```
1        claims they're going to assert against it?

2                    MR. PERKOWSKI:  Right.  Under this

3        proposal, we wouldn't know the claims until

4        March.  I'm willing to give them the ANDA

5        tomorrow, next week, if the identification of

6        claims could be included in the G paragraph of

7        the default standards.

8                    THE COURT:  Well, that's not

9        unreasonable on the surface.

10                   MR. LADOW:  I would say on the

11       surface at best, Your Honor.  They don't have to

12       do any work to produce the ANDAs.  They're ready

13       to go.  They don't have to do any analysis.

14       They --

15                   THE COURT:  No, I understand.

16       That's the reason why I'm kind of wondering why

17       the production of ANDAs is even an issue.

18                   MR. LADOW:  The thing is even if

19       these are initial infringement contentions which

20       is we can supplement as we go along in the case,

21       if that's so, there's no reason in a case that's

22       not going to be over in three months to try to

23       force the plaintiffs to rush to come to a

24       judgment on their initial contentions after just
```

1    having received something, which they've never

2    seen before which is a lot of the guts of the

3    case.

4                THE COURT:  I think the way that

5    he was talking about it is you would have 30

6    days.

7                MR. LADOW:  30 days over Christmas

8    when --

9                THE COURT:  So we will throw in a

10   few extra days.  I'm not heartless.

11               MR. LADOW:  Under this schedule if

12   we did the default schedule, I think there's

13   about 45 days and there is going to be at least

14   three patents.  We've got ANDAs from three

15   different defendants and we think it's just

16   reasonable that we shouldn't have to respond in

17   a month with those contentions and if they're

18   going to hold our feet to the fire because we

19   said something and we didn't look at it or --

20               MR. PERKOWSKI:  Let me clarify.

21   Maybe I'm not being clear.  I don't need

22   contentions in January.  I just want to know

23   what claims are asserted so that I don't have to

24   develop an invalidity position for every single

1     claim.

2                    THE COURT:  But to some extent

3     when they know their infringement contentions is

4     probably when they know what their claims are

5     too, right?

6                    MR. BICKHAM:  And if we are going

7     with the default, the invalidity contentions

8     come after the infringement contentions where

9     the claims are identified.

10                    MR. PERKOWSKI:  Well, I'm not

11    going to wait to work on that until I get your

12    infringement contentions.

13                    THE COURT:  I guess what I'm

14    wondering is -- because as Mr. Phillips said in

15    a slightly different context a moment ago or at

16    least implied -- the time, there is more work to

17    be done in these cases, and it sounds like more

18    in this than most.  So I guess what I'm

19    wondering is why all of the defendants can't

20    produce the ANDAs for the only patents that are

21    actually in the case today.  And by some time,

22    say, the end of next week and you can do the

23    claims and the infringement contentions by, say,

24    February 15th or something gives you plenty of

```
1     time.  Then you can get on to a schedule and you

2     can create a little more time.

3                    MR. FINEMAN:  Your Honor, I need

4     to speak from Par's perspective on this.  Your

5     Honor, this has a direct relationship to our

6     trade secret claim.  And I would direct Your

7     Honor to defense counterclaims, Paragraphs 29

8     through 32 are the relevant ones, and I have to

9     share with Your Honor my copy of --

10                   THE COURT:  I take it you're

11    saying it like that because it's under seal?

12                   MR. FINEMAN:  No, Your Honor.  I

13    just --

14                   THE COURT:  Okay.  And I don't

15    have a copy.  The way you were talking I thought

16    you were working around the fact I'm not going

17    to seal this transcript.

18                   MR. FINEMAN:  No.  I can hand Your

19    Honor a copy of this.

20                   THE COURT:  Why am I looking at

21    this?

22                   MR. FINEMAN:  The relevant

23    paragraphs 29 through 32 of the counterclaim

24    describe the parties Par and plaintiffs'
```

1    discussions about gaining access to Par's ANDA

2    and specifically in Paragraph 32, Your Honor,

3    you will see that we have alleged that on August

4    2nd plaintiffs objected to the offer.  They

5    proposed additional modification to the

6    offer and --

7                    THE COURT:  What are you talking

8    about?

9                    MR. PHILLIPS:  The counterclaim.

10                    MR. FINEMAN:  It's on Page 21 of

11    the document, Your Honor, which is Paragraph 32.

12                    THE COURT:  The counterclaim.

13    Thank you, Mr. Phillips.

14                    MR. FINEMAN:  A few paragraphs

15    before that are relevant, Your Honor, because

16    they discuss the proposals on access to Par's

17    ANDA.  But the key language is the block quote

18    at the bottom of Page 21 carrying on to 22 where

19    it says MonoSol needs to be able to consider

20    trade secret issues in addition to patent issues

21    under the offer and request that and it goes

22    on.

23                    Your Honor, Par's perspective

24    would be that we're happy to provide Your Honor

```
1        with more fulsome briefing on this at a later
2        time.  But we need the trade secret statement
3        from plaintiffs as to what they contend would be
4        the trade secrets allegedly misappropriate
5        before they can have access to our ANDA.
6                     THE COURT:  I don't understand.
7        You're the one who's bringing the trade secret
8        claim.
9                     MR. FINEMAN:  It's a declaratory
10       judgment --
11                    THE COURT:  I understand that.
12                    MR. FINEMAN:  -- that we haven't
13       misappropriated anything.  And if they contend
14       that they have some trade secret that we
15       misappropriated, we need to know from them
16       before they have access to our confidential ANDA
17       what trade secret we have allegedly
18       misappropriated.  And, Your Honor, we are happy
19       to provide briefing on this because this is the
20       way it works in trade secret cases.
21                    I will concede, Your Honor, that
22       it's not typically a DJ action.  But the way it
23       works is that a party claims that there's been
24       alleged trade secret and before they get access
```

1      to the other party's confidential information,

2      they have to say what that trade secret is.

3      Otherwise, they can comb through the other

4      party's information and work backwards as to

5      what the trade secret is.  That's why the law

6      provides for the trade secret to be in advance.

7                    Your Honor, we are happy to take

8      this up separately and we're happy to brief it

9      for Your Honor.  And that's why we cannot

10     provide the ANDA right now.

11                    MR. LADOW:  If I can say one

12     thing and then --

13                    THE COURT:  Then your colleague

14     who's chomping at the bit.

15                    MR. LADOW:  I just want to say

16     these are some of the reasons why we were having

17     some difficulty with the schedule.  We didn't

18     realize until this moment what the issue was

19     about this and now we understand that they have

20     this position that we can't even see the ANDA

21     which I will let Tim speak to that.

22                    MR. BICKHAM:  Well, we precisely

23     didn't bring a trade secret claim because we

24     don't know what they're using or what technology

```
1     they're using in their product.  As Mr. Fineman

2     has said, there was a relationship between

3     MonoSol my client and Par.  That relationship

4     ended and then they came out with a product with

5     another -- with IntelGenX as a partner.  And we

6     don't know what technology they're using or may

7     be using or are not using from MonoSol until we

8     actually see the ANDA.

9               So the situation is completely

10    reverse here.  So we can't come up with our

11    infringement contentions in the patent case

12    without seeing the ANDA.

13               MR. FINEMAN:  Your Honor, if I

14    misspoke, I want to correct it.  I --

15               MR. LADOW:  Can I just say one

16    thing before that?  If there were a trade secret

17    theft, it doesn't matter whether they identify

18    information that they actually use in

19    manufacturing.  What matters is whether they

20    took it or not.  So I just don't see how that

21    logically follows that they can get that kind of

22    relief.  In other words, that that issue will be

23    determined by whether or not the Court finds

24    they actually took something, not by them
```

1 telling us here is what we do.

2     By telling us here's what we do,

3 that doesn't say that they took it.  So that's

4 not a basis for holding up the progress of the

5 case with Watson and Alvogen and having the

6 possibility of splintered schedules because they

7 want to withhold their ANDA for this purpose.

8 I'm sorry, Steve.

9     MR. FINEMAN:  That's fine.  Just

10 to correct in case I misspoke, when I said

11 relationship, I didn't mean prior relationship

12 between the parties.  I meant relationship

13 between the trade secret action and the

14 disclosure of the ANDA.

15     THE COURT:  What is it you say is

16 law in terms of this disclosure of --

17     MR. FINEMAN:  As we understand it,

18 Your Honor -- and like I said, we would like the

19 opportunity to present this on record, not just

20 our say so.  Before they get to look at our

21 confidential information and before they look at

22 our ANDA and see what we do, we want to know

23 that they're saying to us we need to be able to

24 consider trade secret misappropriation.  Well,

```
 1        what is it that we misappropriated?  What is the

 2        trade secret that you think we have before you

 3        look at our information?  What did we allegedly

 4        misappropriate?  Then you can go in and find out

 5        that it wasn't misappropriated.

 6                    THE COURT:  Wouldn't that normally

 7        come up because unless they can say what they

 8        think -- has it ever come up in this context

 9        before where there's an ANDA?  Because it seems

10        like it would make sense if they filed you stole

11        our trade secrets, then you said, no, we

12        didn't.  Then it would make sense you should

13        say, well, you've allegedly stole trade secrets.

14        Well, what trade secret did we steal?  They

15        should have to say it because if they can't

16        articulate what it is you stole, then they

17        shouldn't have filed suit.  But they haven't

18        filed suit.

19                    MR. FINEMAN:  But the problem is,

20        Your Honor -- I know Your Honor typically

21        permits argument from people in person.

22        Mr. Lynch is on the phone.  He can shed some

23        better light on this than I could and if Your

24        Honor will allow him to do so.  But here is the
```

1    problem:  They filed suit under Hatch-Waxman

2    context which will give them access to our ANDA.

3              We have their position in writing

4    that they want to look through our ANDA to try

5    to find trade secret misappropriation.  So if we

6    don't file the DJ action and make the claim for

7    no trade secret misappropriation, well then that

8    whole procedure where they would have to

9    identify the trade secret goes out the window

10   because they would have had access to our ANDA

11   under the Hatch-Waxman scheme.  As I said, if

12   Mr. Lynch can chime in with Your Honor's

13   permission, I think he can probably elaborate it

14   on this better.

15             MR. LYNCH:  Thanks, Your Honor.

16   Just very briefly, the declaratory judgment

17   action identifies an existing dispute between

18   the parties about whether Par is using MonoSol's

19   trade secret.  So because of the dynamics

20   Mr. Fineman just identified, Par raised this to

21   join the issue in this proceeding to have it

22   resolved.  Even though that's not a typical

23   posture, the procedure for requiring the trade

24   secret owner to identify the trade secret is

1    this concern or alleged that Par here has

2    misappropriated, so I think this may be a pretty

3    simple fix.  Because we can simply ask MonoSol

4    to identify the trade secret that supposedly may

5    have been shared with Par and that MonoSol's

6    concern is now being abused by Par, they would

7    know what those are and identify the

8    particularity that would take a procedure four

9    to six weeks, then we can produce the ANDA at

10    that time.

11           The other accommodation we could

12    make to expedite this is to produce portions of

13    the ANDA that we think would implicate this

14    question, allow them to begin portions of that

15    now and produce the balance of it once we have

16    the identification of trade secrets that the law

17    allows.

18           THE COURT:  Mr. Ladow or

19    Mr. Heaton?

20           MR. LADOW:  Mr. Bickham.

21           THE COURT:  Sorry, two Tims.  Were

22    you going to say something?

23           MR. BICKHAM:  Well, we don't think

24    that this potential trade secret issue should

1 hijack the patent case.  And this procedure as

2 far as identifying trade secret information, if

3 that's to be briefed, that's to be briefed.

4 It's something that we've never seen before.

5 And we don't see a reason in this case for that

6 to prevent the patent case from moving forward.

7    If we think there's a trade secret

8 claim, then we're going to have to document that

9 and bring it.  We haven't done it.  So to say

10 that we're not going to be able to prosecute our

11 patent case because of this doesn't make sense

12 to us.

13    MR. LADOW:  I will just add it's a

14 fairly unusual situation.  MonoSol, the holder

15 of the information that provides the

16 information, doesn't make the trade secret

17 claim.  They claim that they don't have it.  And

18 by claiming they don't have it, they can

19 withhold information in the patent case that we

20 need for our infringement contentions.  That's a

21 little Goldbergian for --

22    THE COURT:  On the surface that

23 doesn't make a lot of sense to me either.  That

24 doesn't necessarily mean it's not the law.

```
1              MR. FINEMAN:  Let me clarify one

2      point.  We're not looking to hold up anything.

3      If they believe that Par has misappropriated

4      something -- the keyword is something --

5      identify with particularity what that something

6      is.  If they believe that has occurred, they

7      should within a week be able to identify it.

8              MR. BICKHAM:  I'm sorry.  But we

9      haven't said that we believe that they have

10     taken anything.  We didn't say that.

11             MR. FINEMAN:  With all fairness,

12     Your Honor, if they didn't believe that, there

13     would have been no need for them to have wanted

14     to review our ANDA for purposes of determining

15     whether there's a trade secret misappropriation.

16             MR. BICKHAM:  We --

17             THE COURT:  I don't think we're

18     accomplishing much here.  Let's go back to where

19     we were.  And I guess it probably doesn't matter

20     because Par is probably not a first filer.  But

21     if there's ever any delay here that causes a

22     postponement of the 30-month stay, it's on Par.

23             So I'm not inclined to tell some

24     of the defendants to produce their ANDAs quickly
```

```
 1        and get going as long as Par is taking the

 2        position it's taking.

 3                    MR. PERKOWSKI:  Not to interrupt,

 4        Your Honor, but Watson wouldn't mind moving

 5        forward while they work on this.

 6                    THE COURT:  Well, you don't have

 7        to wait if you want to strike a deal with the

 8        plaintiffs on your own.  But it doesn't make

 9        sense to me to be carving Par out here, there

10        and everywhere.

11                    MS. BOURKE:  Your Honor, I guess I

12        just have a question.  We had proposed omitting

13        the four paragraphs that are related to the

14        default discovery standard.  I don't know what

15        Your Honor's preference is with that.  We also

16        provided a date and --

17                    MR. PHILLIPS:  But, Your Honor,

18        the default standard is if the parties can't

19        agree.  That's the whole purpose of the default

20        standard and we haven't agreed.

21                    MS. BOURKE:  I guess that's true.

22                    THE COURT:  Right.  So is it

23        basically the general gist here is just to omit

24        Paragraphs G through J?
```

```
 1                    MR. PHILLIPS:  No, that's the

 2       whole point.  We want them in because they won't

 3       agree to give us these things on a schedule that

 4       we proposed or any schedule.  They think we

 5       should have to get this through written

 6       discovery.

 7                    THE COURT:  I don't think that's

 8       what they imagine.

 9                    MR. PHILLIPS:  I think that's what

10       they said to us.

11                    MS. BOURKE:  But we agreed on

12       dates.

13                    MR. PHILLIPS:  As a fallback.

14                    MS. BOURKE:  As the fallback.

15                    MR. PHILLIPS:  We don't have

16       agreement, Your Honor, so we say the default

17       standard kicks in.

18                    THE COURT:  All right.  So the

19       default standard is something that you don't put

20       into the scheduling order because it's the

21       default.

22                    MR. PHILLIPS:  It's timed off this

23       conference.  Those are the dates that we have

24       included here.
```

```
 1              THE COURT:  If I knock this out,
 2      what would the dates be?
 3              MR. PHILLIPS:  They would be the
 4      same.
 5              MS. BOURKE:  They wouldn't be
 6      there.  We would operate normally what the
 7      normal scheduling orders are without the default
 8      standard in there.  You would have your
 9      substantial completion of document production
10      and then go forward with fact discovery, the way
11      that at least a lot of cases I've --
12              THE COURT:  You said substantial
13      completion of document discovery, but you didn't
14      mean that, did you?
15              MS. BOURKE:  Document pro -- I
16      guess that's not in your form order, but it's in
17      other form orders, but we don't have that here.
18              MR. PHILLIPS:  The bottom line,
19      Your Honor, is if you knock these out --
20              MS. BOURKE:  No, I'm sorry.  I did
21      mean that.  It is here.
22              THE COURT:  Where?
23              MS. BOURKE:  It's 3(b), Your
24      Honor, substantial completion of document
```

```
1      production is on July 25th.

2                      THE COURT:  3(b)?

3                      MS. BOURKE:  Yes.

4                      MR. PERKOWSKI:  Page 2.

5                      MS. BOURKE:  So we have a fact

6      discovery cut-off and --

7                      THE COURT:  Right.  So you agreed

8      on all of that?

9                      MS. BOURKE:  Yes.

10                     MR. FINEMAN:  Your Honor, I can

11     shed some light on this.  I think Mr. Phillips

12     might have misspoken.  These dates are actually

13     agreed upon.  They are not actually default

14     dates.  I think under the default dates

15     plaintiffs have less time.

16                     THE COURT:  Well, the default

17     dates are 30 days so --

18                     MR. FINEMAN:  Right.  We have

19     given more time than that.

20                     THE COURT:  In any event, these

21     are the dates the defendants want, but you have

22     an objection to these dates?

23                     MS. BOURKE:  No.  We agreed to the

24     dates to the extent the Court was going to
```

1      require these early disclosures, basically have

2      their genesis from the New Jersey local patent

3      rules and haven't been adopted by Delaware yet.

4      And our initial position was except as in a

5      default standard which is the fallback, where we

6      said we don't need these early disclosures, we

7      can just go under a normal scheduling order,

8      but --

9                    THE COURT:  No, we are going to

10     follow the default standards in that regard.

11                   MS. BOURKE:  Okay.  Then we have

12     agreed on dates for all of those.

13                   MR. PHILLIPS:  We offered these

14     dates as a compromise so they didn't have to

15     comply with the default standards.  They now

16     want to remove these dates which are even later.

17                   THE COURT:  In any event, you got

18     your dates.

19                   MR. PHILLIPS:  If you're going to

20     leave them in, yes.

21                   THE COURT:  Well, let's leave them

22     in.

23                   MR. FINEMAN:  To bring Your Honor

24     full circle to where we started this discussion,

1     Paragraph 3(h), the language is contested, that

2     language is added to the default standard where

3     it says core technical documents.

4                    THE COURT:  So the ANDA is

5     included.

6                    MR. FINEMAN:  Well, I think --

7                    THE COURT:  I'm telling you the

8     ANDA is included.  What else do we need to

9     discuss?

10                   MS. BOURKE:  The trial date, I

11    guess.

12                   THE COURT:  Let's go ahead to the

13    claim construction date first.

14                   MR. LADOW:  That's on Page 9.

15                   THE COURT:  Yes.  I'm just looking

16    to see what I wrote down on mine.  How about

17    December 3rd of 2014 at 9:00 a.m.?  How about a

18    trial date?

19                   MR. PHILLIPS:  Your Honor?

20                   THE COURT:  Yes.

21                   MR. PHILLIPS:  That's the Monday

22    after Thanksgiving weekend.

23                   THE COURT:  Wait a second.  Yes, I

24    guess I must have time available then.

```
1                    MR. PERKOWSKI:  If you do, then I

2        do.

3                    MR. FINEMAN:  I don't have a

4        calendar but I may be in trial.

5                    THE COURT:  Well, if I can do two

6        things at once, you can do two things at once.

7                    MR. FINEMAN:  Yes, Your Honor.

8                    THE COURT:  So that's the date.

9        Honestly, the Markman dates, I pick them or they

10       get picked.  Generally speaking, I have trials

11       scheduled and most trials go away.  Actually,

12       I'm guessing that's actually not the week after

13       Thanksgiving.  December 3rd, I don't think it

14       would be that late.  This year was as late as it

15       gets.

16                   MR. FINEMAN:  I want to say, Your

17       Honor, that Thanksgiving next year might be the

18       27th.  I think it's almost as late as this year.

19       Your Honor is correct, this was the latest for

20       Thanksgiving, the 28th.  I think next year is

21       the 27th.

22                   THE COURT:  Well, Mr. Phillips is

23       going to answer the question here.

24                   MR. PHILLIPS:  It's the 27th, Your
```

1     Honor.

2                    THE COURT:  So December 3rd is not

3     a Monday.

4                    MR. PERKOWSKI:  You're right.

5     It's a Wednesday.

6                    MR. PHILLIPS:  So we're all good.

7                    THE COURT:  Okay.  So then the

8     date that we had in mind for the trial was

9     August 31st of 2015.  Trial will start at 8:30

10    and not 9:30.  I guess we will sort out later

11    how long of a trial it is.  But when we do sort

12    it out, it will be three days.  Unless it turns

13    out that it's really lots of infringement issues

14    that in all likelihood or in all fairness the

15    fact that there are three defendants, take more

16    time.  But if the infringement issues are

17    insurmountable, than it's three days.

18                    MR. PERKOWSKI:  You meant August

19    31st or 3rd?

20                    THE COURT:  I meant August 31st of

21    2015.  What did I say?

22                    MR. BICKHAM:  You said August

23    31st.

24                    THE COURT:  August 3rd is not a

1    day that I would want to start a trial.  Then

2    the pretrial conference will be August 21st at

3    11:00 a.m.

4                    Is there anything else anybody

5    wants to talk about?

6                    MR. PHILLIPS:  Your Honor, when

7    will we be able to start sorting out the length

8    of this trial?  Our concern is if we don't get

9    on your calendar now, we're going to end up in a

10   bad situation.  There are going to be three

11   patents in this case within the next month and

12   we can end up with as many as 12 patents in this

13   case.

14                    Plaintiffs are talking about

15   adding a number of additional parties.  With all

16   due respect to Your Honor's statement, this is

17   not going to be a three-day trial hopefully in

18   fairness to the parties.  So we're going to need

19   some time --

20                    THE COURT:  Well, typically when I

21   schedule a trial to begin on a Monday, what it

22   means is I have the Thursday and Friday actually

23   not scheduled for any trial.  So somewhere down

24   the road maybe when we have the Markman or

1    something and you want to bring up how long it

2    should be, that would be the time to bring it

3    up.

4                    MR. PHILLIPS:  Just so Your Honor

5    is aware, the 30-month stay expires in February

6    of 2016.

7                    THE COURT:  I got January 10th for

8    one and February 28th for the second.  I assume

9    Alvogen is going to be later.

10                    MR. PERKOWSKI:  Correct.

11                    THE COURT:  Okay.  I got those

12    dates in mind.

13                    MR. PERKOWSKI:  Thank you, Your

14    Honor.

15                    THE COURT:  Is there anything else

16    anybody wants to talk about?  Do you think

17    somehow or another you can reduce what was said

18    here in writing?

19                    MR. PHILLIPS:  I have complete

20    confidence in Mary.

21                    THE COURT:  She has complete

22    confidence in herself so that's good.

23                    MS. BOURKE:  I'm sure they will

24    correct me if I get something wrong.

```
 1                    THE COURT:  Well, thank you and I

 2       will look forward to seeing you somewhere down

 3       the road, hopefully later rather than sooner but

 4       whenever you actually need me.  Have a nice day.

 5                    MR. PHILLIPS:  Thank you, Your

 6       Honor.

 7                    MS. BOURKE:  Thank you, Your

 8       Honor.

 9                    MR. FINEMAN:  Thank you, Your

10       Honor.

11                    MR. LADOW:  Thank you, Your Honor.

12                    MR. PERKOWSKI:  Thank you, Your

13       Honor.

14                    MR. BICKHAM:  Thank you, Your

15       Honor.

16                    (The proceedings ended at

17       3:00 p.m.)

18

19

20

21

22

23

24
```

1                    C E R T I F I C A T I O N

2

3              I, Taneha Carroll, Professional

Court Reporter, certify that the foregoing is a

4  true and accurate transcript of the foregoing

5  proceeding.

6

7              I further certify that I am neither

8  attorney nor counsel for, nor related to nor

9  employed by any of the parties to the action in

10  which this proceeding was taken; further, that I am

11  not a relative or employee of any attorney or

12  counsel employed in this case, nor am I financially

13  interested in this action.

14

15

16        /s/ Taneha Carroll
          Taneha Carroll

17
          Professional Reporter and Notary Public

18

19

20

21

22

23

24

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418