# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3   RECKITT BENCKISER            :
     PHARMACEUTICALS, INC.,       : No. 1:13-cv-01461-RGA
 4   et al.,                      : No. 1:13-cv-01674-RGA
                                  :
 5          Plaintiffs,           :
         v.                       :
 6                                :
     PAR PHARMACEUTICALS INC.,    :
 7   et al.,                      :
            Defendants.           :
 8

 9
                    Friday, December 13, 2013
10                  1:30 p.m.

11                  Rule 16
                    Chambers of Judge Richard G. Andrews
12
                    844 King Street
13                  Wilmington, Delaware

14
        BEFORE:   THE HONORABLE Richard G. Andrews,
15                United States District Court Judge

16
        APPEARANCES:
17
                    WOMBLE CARLYLE SANDRIDGE RICE
18                  BY:  MARY W. BOURKE, ESQ.

19                              -and-

20                  TROUTMAN SANDERS LLP
                    BY:  DANIEL LADOW, ESQ.
21                  BY:  TIMOTHY HEATON, ESQ.
                    BY:  JAMES BOLLINGER, ESQ.
22
                        On behalf of Rickett Benckiser
23                      Pharmaceuticals, Inc.

24
```

1    time. Then you can get on to a schedule and you
2    can create a little more time.
3           MR. FINEMAN: Your Honor, I need
4    to speak from Par's perspective on this. Your
5    Honor, this has a direct relationship to our
6    trade secret claim. And I would direct Your
7    Honor to defense counterclaims, Paragraphs 29
8    through 32 are the relevant ones, and I have to
9    share with Your Honor my copy of --
10           THE COURT: I take it you're
11    saying it like that because it's under seal?
12           MR. FINEMAN: No, Your Honor. I
13    just --
14           THE COURT: Okay. And I don't
15    have a copy. The way you were talking I thought
16    you were working around the fact I'm not going
17    to seal this transcript.
18           MR. FINEMAN: No. I can hand Your
19    Honor a copy of this.
20           THE COURT: Why am I looking at
21    this?
22           MR. FINEMAN: The relevant
23    paragraphs 29 through 32 of the counterclaim
24    describe the parties Par and plaintiffs'

1   discussions about gaining access to Par's ANDA

2   and specifically in Paragraph 32, Your Honor,

3   you will see that we have alleged that on August

4   2nd plaintiffs objected to the offer.  They

5   proposed additional modification to the

6   offer and --

7                   THE COURT:  What are you talking

8   about?

9                   MR. PHILLIPS:  The counterclaim.

10                  MR. FINEMAN:  It's on Page 21 of

11  the document, Your Honor, which is Paragraph 32.

12                  THE COURT:  The counterclaim.

13  Thank you, Mr. Phillips.

14                  MR. FINEMAN:  A few paragraphs

15  before that are relevant, Your Honor, because

16  they discuss the proposals on access to Par's

17  ANDA.  But the key language is the block quote

18  at the bottom of Page 21 carrying on to 22 where

19  it says MonoSol needs to be able to consider

20  trade secret issues in addition to patent issues

21  under the offer and request that and it goes

22  on.

23                  Your Honor, Par's perspective

24  would be that we're happy to provide Your Honor

1    with more fulsome briefing on this at a later
2    time.  But we need the trade secret statement
3    from plaintiffs as to what they contend would be
4    the trade secrets allegedly misappropriate
5    before they can have access to our ANDA.
6              THE COURT:  I don't understand.
7    You're the one who's bringing the trade secret
8    claim.
9              MR. FINEMAN:  It's a declaratory
10   judgment --
11             THE COURT:  I understand that.
12             MR. FINEMAN:  -- that we haven't
13   misappropriated anything.  And if they contend
14   that they have some trade secret that we
15   misappropriated, we need to know from them
16   before they have access to our confidential ANDA
17   what trade secret we have allegedly
18   misappropriated.  And, Your Honor, we are happy
19   to provide briefing on this because this is the
20   way it works in trade secret cases.
21             I will concede, Your Honor, that
22   it's not typically a DJ action.  But the way it
23   works is that a party claims that there's been
24   alleged trade secret and before they get access

1    to the other party's confidential information,

2    they have to say what that trade secret is.

3    Otherwise, they can comb through the other

4    party's information and work backwards as to

5    what the trade secret is.  That's why the law

6    provides for the trade secret to be in advance.

7                Your Honor, we are happy to take

8    this up separately and we're happy to brief it

9    for Your Honor.  And that's why we cannot

10   provide the ANDA right now.

11               MR. LADOW:  If I can say one

12   thing and then --

13               THE COURT:  Then your colleague

14   who's chomping at the bit.

15               MR. LADOW:  I just want to say

16   these are some of the reasons why we were having

17   some difficulty with the schedule.  We didn't

18   realize until this moment what the issue was

19   about this and now we understand that they have

20   this position that we can't even see the ANDA

21   which I will let Tim speak to that.

22               MR. BICKHAM:  Well, we precisely

23   didn't bring a trade secret claim because we

24   don't know what they're using or what technology

1      they're using in their product.  As Mr. Fineman

2      has said, there was a relationship between

3      MonoSol my client and Par.  That relationship

4      ended and then they came out with a product with

5      another -- with IntelGenX as a partner.  And we

6      don't know what technology they're using or may

7      be using or are not using from MonoSol until we

8      actually see the ANDA.

9                     So the situation is completely

10     reverse here.  So we can't come up with our

11     infringement contentions in the patent case

12     without seeing the ANDA.

13                     MR. FINEMAN:  Your Honor, if I

14     misspoke, I want to correct it.  I --

15                     MR. LADOW:  Can I just say one

16     thing before that?  If there were a trade secret

17     theft, it doesn't matter whether they identify

18     information that they actually use in

19     manufacturing.  What matters is whether they

20     took it or not.  So I just don't see how that

21     logically follows that they can get that kind of

22     relief.  In other words, that that issue will be

23     determined by whether or not the Court finds

24     they actually took something, not by them

1 telling us here is what we do.

2 By telling us here's what we do,
3 that doesn't say that they took it. So that's
4 not a basis for holding up the progress of the
5 case with Watson and Alvogen and having the
6 possibility of splintered schedules because they
7 want to withhold their ANDA for this purpose.
8 I'm sorry, Steve.

9 MR. FINEMAN: That's fine. Just
10 to correct in case I misspoke, when I said
11 relationship, I didn't mean prior relationship
12 between the parties. I meant relationship
13 between the trade secret action and the
14 disclosure of the ANDA.

15 THE COURT: What is it you say is
16 law in terms of this disclosure of --

17 MR. FINEMAN: As we understand it,
18 Your Honor -- and like I said, we would like the
19 opportunity to present this on record, not just
20 our say so. Before they get to look at our
21 confidential information and before they look at
22 our ANDA and see what we do, we want to know
23 that they're saying to us we need to be able to
24 consider trade secret misappropriation. Well,

1   what is it that we misappropriated?  What is the
2   trade secret that you think we have before you
3   look at our information?  What did we allegedly
4   misappropriate?  Then you can go in and find out
5   that it wasn't misappropriated.
6                  THE COURT:  Wouldn't that normally
7   come up because unless they can say what they
8   think -- has it ever come up in this context
9   before where there's an ANDA?  Because it seems
10  like it would make sense if they filed you stole
11  our trade secrets, then you said, no, we
12  didn't.  Then it would make sense you should
13  say, well, you've allegedly stole trade secrets.
14  Well, what trade secret did we steal?  They
15  should have to say it because if they can't
16  articulate what it is you stole, then they
17  shouldn't have filed suit.  But they haven't
18  filed suit.
19                  MR. FINEMAN:  But the problem is,
20  Your Honor -- I know Your Honor typically
21  permits argument from people in person.
22  Mr. Lynch is on the phone.  He can shed some
23  better light on this than I could and if Your
24  Honor will allow him to do so.  But here is the

```
 1        problem:  They filed suit under Hatch-Waxman
 2        context which will give them access to our ANDA.
 3                       We have their position in writing
 4        that they want to look through our ANDA to try
 5        to find trade secret misappropriation.  So if we
 6        don't file the DJ action and make the claim for
 7        no trade secret misappropriation, well then that
 8        whole procedure where they would have to
 9        identify the trade secret goes out the window
10        because they would have had access to our ANDA
11        under the Hatch-Waxman scheme.  As I said, if
12        Mr. Lynch can chime in with Your Honor's
13        permission, I think he can probably elaborate it
14        on this better.
15                       MR. LYNCH:  Thanks, Your Honor.
16        Just very briefly, the declaratory judgment
17        action identifies an existing dispute between
18        the parties about whether Par is using MonoSol's
19        trade secret.  So because of the dynamics
20        Mr. Fineman just identified, Par raised this to
21        join the issue in this proceeding to have it
22        resolved.  Even though that's not a typical
23        posture, the procedure for requiring the trade
24        secret owner to identify the trade secret is
```

1  this concern or alleged that Par here has
2  misappropriated, so I think this may be a pretty
3  simple fix.  Because we can simply ask MonoSol
4  to identify the trade secret that supposedly may
5  have been shared with Par and that MonoSol's
6  concern is now being abused by Par, they would
7  know what those are and identify the
8  particularity that would take a procedure four
9  to six weeks, then we can produce the ANDA at
10  that time.
11             The other accommodation we could
12  make to expedite this is to produce portions of
13  the ANDA that we think would implicate this
14  question, allow them to begin portions of that
15  now and produce the balance of it once we have
16  the identification of trade secrets that the law
17  allows.
18             THE COURT:  Mr. Ladow or
19  Mr. Heaton?
20             MR. LADOW:  Mr. Bickham.
21             THE COURT:  Sorry, two Tims.  Were
22  you going to say something?
23             MR. BICKHAM:  Well, we don't think
24  that this potential trade secret issue should

```
1        hijack the patent case.  And this procedure as
2        far as identifying trade secret information, if
3        that's to be briefed, that's to be briefed.
4        It's something that we've never seen before.
5        And we don't see a reason in this case for that
6        to prevent the patent case from moving forward.
7                   If we think there's a trade secret
8        claim, then we're going to have to document that
9        and bring it.  We haven't done it.  So to say
10       that we're not going to be able to prosecute our
11       patent case because of this doesn't make sense
12       to us.
13                  MR. LADOW:  I will just add it's a
14       fairly unusual situation.  MonoSol, the holder
15       of the information that provides the
16       information, doesn't make the trade secret
17       claim.  They claim that they don't have it.  And
18       by claiming they don't have it, they can
19       withhold information in the patent case that we
20       need for our infringement contentions.  That's a
21       little Goldbergian for --
22                  THE COURT:  On the surface that
23       doesn't make a lot of sense to me either.  That
24       doesn't necessarily mean it's not the law.
```

1                   MR. FINEMAN:  Let me clarify one
2     point.  We're not looking to hold up anything.
3     If they believe that Par has misappropriated
4     something -- the keyword is something --
5     identify with particularity what that something
6     is.  If they believe that has occurred, they
7     should within a week be able to identify it.
8                   MR. BICKHAM:  I'm sorry.  But we
9     haven't said that we believe that they have
10    taken anything.  We didn't say that.
11                  MR. FINEMAN:  With all fairness,
12    Your Honor, if they didn't believe that, there
13    would have been no need for them to have wanted
14    to review our ANDA for purposes of determining
15    whether there's a trade secret misappropriation.
16                  MR. BICKHAM:  We --
17                  THE COURT:  I don't think we're
18    accomplishing much here.  Let's go back to where
19    we were.  And I guess it probably doesn't matter
20    because Par is probably not a first filer.  But
21    if there's ever any delay here that causes a
22    postponement of the 30-month stay, it's on Par.
23                  So I'm not inclined to tell some
24    of the defendants to produce their ANDAs quickly

1    and get going as long as Par is taking the
2    position it's taking.
3                 MR. PERKOWSKI:  Not to interrupt,
4    Your Honor, but Watson wouldn't mind moving
5    forward while they work on this.
6                 THE COURT:  Well, you don't have
7    to wait if you want to strike a deal with the
8    plaintiffs on your own.  But it doesn't make
9    sense to me to be carving Par out here, there
10   and everywhere.
11                MS. BOURKE:  Your Honor, I guess I
12   just have a question.  We had proposed omitting
13   the four paragraphs that are related to the
14   default discovery standard.  I don't know what
15   Your Honor's preference is with that.  We also
16   provided a date and --
17                MR. PHILLIPS:  But, Your Honor,
18   the default standard is if the parties can't
19   agree.  That's the whole purpose of the default
20   standard and we haven't agreed.
21                MS. BOURKE:  I guess that's true.
22                THE COURT:  Right.  So is it
23   basically the general gist here is just to omit
24   Paragraphs G through J?